**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MENS PETIT*, on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>        Plaintiff,<br><br>   v.<br><br>GURNEY'S INN RESORT & SPA LLC, MEI GNY HOSPITALITY LLC, BLDG MANAGEMENT CO., INC., JOHN DOE CORPORATIONS 1-10, GEORGE FILOPOULOS, and LLOYD MICHAEL GOLDMAN,<br><br>        Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

---

1.      Plaintiff, MENS PETIT ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorney, files this Class and Collective Action Complaint against GURNEY'S INN RESORT & SPA LLC, MEI GNY HOSPITALITY LLC, BLDG MANAGEMENT CO., INC., Defendant JOHN DOE CORPORATIONS 1-10, (collectively the "Corporate Defendants"), GEORGE FILOPOULOS and LLOYD MICHAEL GOLDMAN, ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

1

## INTRODUCTION

2.       Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime, due to invalid tip credit, (3) illegally retaining gratuities, (4) unpaid wages, including overtime, due to invalid lodging credit, (5) unpaid uniform expenses, (6) liquidated damages, and (7) attorneys' fees and costs.

3.       Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime, due to invalid tip credit, (3) unpaid spread of hours premium, (4) illegally retaining gratuities, (5) unpaid wages, including overtime, due to invalid lodging credit, (6) unpaid uniform expenses, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

4.       Furthermore, Plaintiff alleges that pursuant to the New York State Human Rights Law, New York Executive Law §296 ("NYSHRL"), that Plaintiff was deprived of his statutory rights as a result of Defendants' discriminatory employment practices based on Plaintiff's race and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

2

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b),

28 U.S.C. §§1331, 1337, and 1343 and has supplemental jurisdiction over Plaintiff's state law

claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.      Plaintiff MENS PETIT is a resident of Queens County, New York.

8.      Defendants collectively own and operate two (2) luxury resorts in Suffolk

County, New York located at:

    a)  Gurney's Montauk Resort & Seawater Spa: 290 Old Montauk Hwy, Montauk,

        NY 11954 (individually, "Resort"); and

    b)  Gurney's Star Island Resort & Marina: 32 Star Island Rd, Montauk, NY 11954

        (individually, "Marina", and collectively, the "Resorts")

9.      Defendants operate the Resorts as a single integrated enterprise under the

common control of Defendants. All the Resorts are engaged in related activities, share common

ownership, and have a common business purpose.

    a)  Individual Defendants GEORGE FILOPOULOS and LLOYD MICHAEL

        GOLDMAN own and operate both the Resorts. Individual Defendants appear

        as owners and/or operate on registrations, licenses, public reports, and news

        articles. *See* **Exhibit A** and **Exhibit B**.

    b)  BLDG MANAGEMENT CO., INC., is owned by one or both of the Individual

        Defendants, both of whom share an ownership interest in the Resorts. Further,

        while Defendant BLDG MANAGEMENT CO., INC. and Individual

Defendants own the assets associated with the Resorts, the Resorts are operated directly by Defendants' subsidiaries GURNEY'S INN RESORT & SPA LLC and MEI GNY HOSPITALITY LLC, which operate Defendant's business, maintain payroll, manage and maintain assets. *See* **Exhibit A**; *compare with,* **Exhibit C**.  Despite employees working for the Resorts, all job postings and the listed employer of record are listed for GURNEY'S INN RESORT & SPA LLC and MEI GNY HOSPITALITY LLC.

c)   The Resorts have a centralized Human Resources that deals with hiring, firing, and administering all the Resorts' work force. Employees at both Resorts share a common human resources director. *See* **Exhibit D**. While Plaintiff was employed that individual was Desiree Landazabal.

d)   Moreover, Defendants' employees are exchanged, rotated, and required to work at each Resort and Marina location on an as needed basis.

10.   Corporate Defendant GURNEY'S INN RESORT & SPA LLC is a foreign limited liability company organized under the laws of the State of Delaware and is authorized to transact business in the State of New York, with a principal place of business at 290 Old Montauk Hwy, Montauk, NY 11954, and an address for service of process located at c/o BLDG MANAGEMENT CO. INC. 417 Fifth Avenue, 4th Floor, New York, NY 10016.

11.   Corporate Defendant MEI GNY HOSPITALITY, INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of

business at 290 Old Montauk Hwy, Montauk, NY 11954, and an address for service of process located at c/o THE LLC 11 East 44th Street, Suite 1001, New York, NY 10017.

12.     Corporate Defendant BLDG MANAGEMENT CO. INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 417 Fifth Avenue, 4th Floor, New York, NY 10016.

13.     Defendants JOHN DOE CORPORATIONS 1-10 are entities owned in whole or in part by either Individual Defendants and/or Corporate Defendants, and are used  to operate the Resorts on behalf of the Individual Defendants. Defendants JOHN DOE CORPORATIONS 1-10 all use the shared human resources department, common payroll, and wage policies implemented by Individual Defendants to operate the Resorts.

14.     Individual Defendant, GEORGE FILOPOULOS is the principal and chief executive officer of Corporate Defendant MEI GNY HOSPITALITY LLC, as well as the principal and owner of Corporate Defendant GURNEY'S INN RESORT & SPA LLC. Defendant GEORGE FILOPOULOS exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. GEORGE FILOPOULOS exercises the power to, and delegates to managers and supervisors the power to, fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, GEORGE FILOPOULOS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. GEORGE FILOPOULOS exercised functional control over the business and financial

operations of the Resorts. GEORGE FILOPOULOS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

15.     Individual Defendant, LLOYD MICHAEL GOLDMAN is the principal and chief executive officer of Corporate Defendant BLDG MANAGEMENT CO. INC., as well as the principal and owner of Corporate Defendant GURNEY'S INN RESORT & SPA LLC. Defendant LLOYD MICHAEL GOLDMAN exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. LLOYD MICHAEL GOLDMAN exercises the power to, and delegates to managers and supervisors the power to, fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, LLOYD MICHAEL GOLDMAN would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. LLOYD MICHAEL GOLDMAN exercised functional control over the business and financial operations of the Resorts. LLOYD MICHAEL GOLDMAN had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

16.     Although Plaintiff did not work at the Marina, both Resorts are appropriately named in this Complaint through the relevant Defendants described above. Because the Resorts share employees and identical illegal wage and hour policies, the Resorts and the relevant Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiff seeks to represent.

6

17.    At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

18. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members were directly essential to the businesses operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

19.    Plaintiff brings claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, housekeepers, cooks, food preparers, dishwashers, porters, hostesses, bussers, food runners, bartenders, barbacks, and waiters) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff PETIT and FLSA Collective Plaintiffs (i) their proper wages, including overtime, (ii) their proper wages, including overtime, due to timeshaving, (iii) wages due to improper failure to reimburse tools of the trade expenses, and (iv) their proper wages, including overtime, due to improperly deducted lodging credit. Further, with respect to tipped employees, Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they failed to satisfy all statutory requirements for taking a tip credit.

21.    Plaintiff's claims stated herein are essentially the same as those of the other

FLSA Collective Plaintiffs.

22.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

23.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including, but not limited to, housekeepers, cooks, food preparers, dishwashers, porters, hostesses, bussers, food runners, bartenders, barbacks, and waiters)  employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members").

24.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of

that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff PETIT is a member of the Class and the Tipped Subclass.

26.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, (ii) failing to pay proper wages, including overtime, due to timeshaving, (iii) unpaid spread of hours premiums, (iv) failing to pay proper wages due to improperly deducted lodging credits, (v) failure to reimburse tools of the trade expenses, (vi) failing to provide Class Members with proper wage statements, and (vii) failing to provide Class members with notice of wage rate upon hiring and as required thereafter pursuant to the New York Labor Law.

27.     With regard to the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under the NYLL. Plaintiff PETIT and the other members of the Tipped Subclass suffered from Defendants' utilization of an invalid tip credit because Defendants: (i) failed to properly provide written tip credit notice at hiring; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme whereby managers and non-tipped employees participated; (iv) illegally retained tips; (v) failed to accurately keep track of daily

tips earned and maintain records thereof; and (vi) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period.

28.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

29.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented Plaintiffs in wage and hour cases.

30.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each individual Class members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of

the Class would create a risk of inconsistent and varying adjudications with respect to individual Class members, establishing incompatible standards of conduct for Defendant, resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of New York law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class member properly.

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiff and the Class members for their work;

d) Whether Defendants properly notified Plaintiff and the Class of their hourly rates;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class members for all hours worked;

f) Whether Defendants properly provided written notice to all tipped employees, in their native language, that Defendants were taking a tip credit;

g) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

h) Whether Defendants instituted an improper tip pool whereby managers and non-tipped employees participated;

i) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

j) Whether Defendants improperly deducted a lodging credit;

k) Whether Defendants accurately tracked the costs of providing lodging to employees;

l) Whether Defendants upheld proper lodging standards;

m) Whether Defendants paid Plaintiff and Class members the New York State "spread of hours" premium when their workdays exceeded ten hours;

n) Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL and applicable state laws;

o) Whether Defendants reimbursed employees for tools of the trade expenses; and

p) Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the NYLL.

## STATEMENT OF FACTS

### *Wage and Hour Allegations:*

33. In or around April 15, 2021, Plaintiff MENS PETIT was hired to work as a Bartender at Gurney's Montauk Resort & Seawater Spa located at 290 Old Montauk Hwy, Montauk, NY 11954. Plaintiff's employment with Defendants was terminated in or around July 4, 2022.

34. Plaintiff's employment was seasonal and, between the dates of September 2021 to around April 2022, he did not work at Gurney's Montauk Resort & Seawater Spa.

35. Throughout his employment, Plaintiff was compensated at an hourly rate of nine dollars and thirty-five cents ($9.35) per hour.

36. Throughout his employment, Plaintiff worked three (3) to five (5) days, as needed. He was scheduled to start at 10:30 a.m. and would finish between 12:00 a.m. and 3:00 a.m. Plaintiff worked shifts ranging from thirteen and a half (13.5) hours to sixteen and a half (16.5) hours. Plaintiff's workweeks ranged from forty and one-half (40.5) hours to seventy (70) hours.

37. Plaintiff and Class members regularly worked days that exceeded ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff and Class members the spread of hours premium for workdays that exceeded ten (10) hours in length.

38. Throughout his employment, Plaintiff was never permitted to take a free and clear meal break during his shifts. However, Defendants automatically deducted a thirty (30)

13

minute meal break from Plaintiff's wages, despite Plaintiff never taking a free and clear meal break. Similarly, FLSA Collective Plaintiffs and Class Members were similarly not granted free and clear meal breaks and were still automatically deducted thirty (30) minutes from their wages by Defendants.

39.     As a requirement of Plaintiff's employment, Plaintiff had to live on premises during the seasons he was employed, in lodging provided by Defendants.

40.     The lodging provided to Plaintiff was a small room within the Resort that had two (2) beds and one (1) bathroom. The room was shared amongst four (4) employees. There was no cooking area, dishes had to be washed in the bathroom sink, and the beds were shared.

41.     Defendants' deducted a weekly lodging credit of one-hundred-fifty dollars ($150) from Plaintiff, FLSA Collective Plaintiffs, and Class members for the above lodging.

42.     Under NYLL § 146-3.8, "All lodging provided by an employer to an employee must comply with all community standards for housing. For purposes of this Part, community standards shall mean all applicable state, county and local health or housing codes. The employer shall have the burden of proof that provided lodging complies with community standards."

43.     The lodging Defendants provided to Plaintiff and Class members did not follow the standards of OSHA Standard 29 CFR 1910.142 as well as other applicable laws.

44.     OSHA Standard 29 CFR 1910.142 applies to job related housing that is provided by the employer on a temporary basis for workers not at a permanent location.

45.     By not providing lodging that adhered to all applicable housing laws and codes, Defendants' knowingly and willfully violated Plaintiff's and Class member's rights under the NYLL by deducting an invalid lodging credit from their wages.

46.     The Department of Labor Wage and Hour Division's website, https://www.dol.gov/agencies/whd/direct-care/credit-wages/faq, states that in order for an employer to properly deduct a lodging credit under the FLSA, "The employer must maintain accurate records of the costs incurred in the furnishing of the lodging." and that "The lodging must primarily benefit the employee, rather than the employer."

47.     Defendants never notified Plaintiff of what his lodging credit went towards or how much money Defendants' were actually expending on his room, nor did they ever provide any records of such to Plaintiff. Additionally, Plaintiff's lodging did not primarily benefit him, as he had to share the room with three people he did not know, and would be forced to share a bed with co-workers. Additionally, there was not adequate space for all four occupants of the room. Defendants primarily benefitted from these lodging conditions and deductions.

48.     Defendants violated the rights of Plaintiff and FLSA Collective Plaintiffs under the FLSA, by deducting an improper lodging credit.

49.     The Resort that Plaintiff worked in contains four (4) bars. Plaintiff would be assigned to one (1) bar at the start of his shift, and earn tips from the tip pool of that individual bar.

50.     Defendants regularly requested Plaintiff to assist in bartending at one of the other three bars he was not assigned to. However, Defendants would not include Plaintiff in the tip pool of those bars for which he worked. As a result, Defendants were illegally retaining tips Plaintiff earned for his time at secondary bars and deducting an improper tip credit for his hours worked at them. Like Plaintiff, members of the Tipped Subclass similarly did not receive all tips they earned from Defendants and had an improper tip credit deducted from their wages.

51.     From the start to the end of his employment, Plaintiff was paid at sub-minimum

wage hourly. However, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants: (i) failed to provide proper notice that a tip credit was being claimed, (ii) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiff and Tipped Subclass members, and (iv) implemented an invalid tip-pooling scheme.

52.    Additionally, Plaintiff and his coworkers regularly asked managers to see Defendants' tip records and would be told that there were no records of tips. Defendants did not keep track of the tips earned by Plaintiff, FLSA Collective Plaintiffs, or Tipped Subclass members.

53.    At the start of his employment, Plaintiff was instructed to purchase a uniform, for which he was told he would be reimbursed. Plaintiff spent two-hundred twenty-nine dollars and forty-two cents ($229.42) on this uniform, and sent the receipt to Defendants. Despite informing Plaintiff, FLSA Collective Plaintiffs, and Class Members that such expenses will be reimbursed, Defendants never reimbursed Plaintiff for this uniform expense. Like Plaintiff, Defendants also failed to reimburse the expenses of FLSA Collective Plaintiffs, or Class members.

54.    Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and at all changes of payrate thereafter. Plaintiff did not receive proper wage notices either upon being hired or upon every change of pay rate in violation of the NYLL.

55.    Defendant knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiff and other non-exempt employees at the beginning of employment and annually thereafter, in violation of the applicable state wage laws.

56.     Defendant knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage statements at all relevant times. Class members also did not receive proper wage statements, in violation of the applicable wage laws.

57.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

58.     Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendant's conduct actually harmed Plaintiff and Class members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendant , allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

17

59.     The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class members similarly struggle to timely pay debts due to Defendant's continued attempts to hide wrongdoing from employees.

60.     Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass members. Defendants were not entitled to claim any tip credits under the NYLL.

61.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class members their proper wages, including overtime.

62.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class members their proper wages, including overtime, due to timeshaving.

63.     Defendants knowingly and willfully operated their business with a policy of improperly deducting lodging credits from Plaintiff, FLSA Collective Plaintiffs and the Class members, in violation of the FLSA and the NYLL.

64.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff and Class members, in violation of the NYLL.

66.     Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff for uniform expenses.

***Discrimination Allegations***

67.     In addition, Plaintiff suffered from Defendants' discriminatory practices and the hostile work environment fostered by Defendants.

68.     Plaintiff is a Black male.

69.     An example of one such instance of discrimination occurred while Plaintiff was working at an outdoor bar at Defendants Resort. He became overburdened and requested assistance from a bartender who was working at an indoor bar that was not busy. The bartender responded by saying "I can't be out in the sun, or else I will get black like you."

70.     Plaintiff complained about the racial discrimination he experienced to two of his managers, Kate Killoran and Mikaly [LAST NAME UNKNOWN], but these two managers did nothing about the racial discrimination.

71.     As a result of Defendants' manager's lack of action upon the racial discrimination Plaintiff faced, Plaintiff had to continue experiencing harassment from fellow employees, who racially discriminated against him, at work.

72.     Due to Defendants permitting and fostering a hostile work environment due to Defendants' manager's biased, discriminatory actions against Plaintiff, based on his race, Plaintiff suffered physical and emotional damages, discomfort, and humiliation while working for Defendants.

73.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

## STATEMENT OF CLAIM

**Count I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

74.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

75.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

76.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

77.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

78.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime.

79.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

80.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit**.**

81.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid lodging credit**.**

82.     At all relevant times, Defendants had a policy and practice that failed to reimburse uniform expenses to Plaintiff and FLSA Collective Plaintiffs

83.     At all relevant times, Defendants had a policy and practice of unlawfully retaining Plaintiff and a subclass of FLSA Collective Plaintiffs' gratuities.

84.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, when Defendants knew or should had known such was due.

85.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

86.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

87.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages due to invalid tip credit, unlawful tip retentions and deductions, unpaid wages due to improperly deducted meal credits, plus an equal amount as liquidated damages.

88.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

89.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

90.    At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

91.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class members all wages, including overtime, in direct violation of the NYLL.

92.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class members all wages, including overtime due to timeshaving, in direct violation of the NYLL.

93.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class members all wages, including overtime due to invalid tip credit, in direct violation of the NYLL.

94.    At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class members all wages, including overtime due to invalid lodging credit, in direct violation of the NYLL.

95.    At all relevant times, Defendants engaged in a policy and practice of failing to pay Plaintiff and Class members their spread of hours premiums, in direct violation of the NYLL.

96.    At all relevant times, Defendants had a policy and practice that failed to reimburse uniform expenses to Plaintiff and Class members

97.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass members proper tip notices, at date of hiring and annually thereafter, as required under the NYLL.

98.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

99.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the NYLL.

100.    Due to Defendants' NYLL violations, Plaintiff, Class Members and the Tipped Subclass members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages, including overtime, due to an invalid tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities, unpaid wages for improperly deducted meal credits, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

101.    Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

102.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of race.

103.    Plaintiff was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

104.    Defendants operated a business that discriminated against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of his employment because of his race in ways including, but not limited to:

      a.  Creating and fostering a hostile work environment based on Plaintiff's race;

      b.  Permitting employees to racially discriminate against Plaintiff

      c.  Ignoring complaints of racial discrimination

105.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

106.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

107.    Due to Defendants' violations under the NYSHRL, based on discrimination on the basis of race, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs, and Class members, respectfully request that this Court grant the following relief:

      a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, and the NYSHRL;

      b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

24

c.   An award of unpaid wages, including overtime under the FLSA and the NYLL;

d.   An award of unpaid wages, including overtime, due to timeshaving due under the FLSA and the NYLL;

e.   An award of unpaid wages due to invalid tip credit deductions under the NYLL;

f.   An award of unpaid spread of hours premiums under the NYLL;

g.   An award of unlawfully retained gratuities under the FLSA and the NYLL;

h.   An award of unpaid wages due to improperly deducted lodging credits due under the FLSA and the NYLL;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

j.   An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

k.   An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

l.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs

m.   Designation of Plaintiff as Representative of the Tipped Subclass members;

n.   Designation of this action as a class action pursuant to F.R.C.P. 23;

o.   Designation of Plaintiff as Representative of the Class; and

p.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 30, 2022

Respectfully submitted,

By:     */s/ C.K. Lee*
        C.K. Lee, Esq.

        **LEE LITIGATION GROUP, PLLC**
        C.K. Lee (CL 4086)
        148 West 24th Street, Second Floor
        New York, NY 10011
        Tel.: 212-465-1188
        Fax: 212-465-1181
        *Attorneys for Plaintiff, FLSA Collective*
        *Plaintiffs and the Class*